UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:06-CV-657-R

ORION INVESTMENTS, LLC,                                          PLAINTIFF

v.

MCBRIDE & SON HOMES LAND
DEVELOPMENT, INC.,                                               DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Defendant McBride & Son Land Development's Renewed Motion for Summary Judgment (Docket #75). Plaintiff Orion Investments responded (Docket #76). Defendant replied (Docket #79). This matter is now ripe for adjudication. For the reasons that follow, Defendant's motion is GRANTED.

## BACKGROUND

Olympia Homes, an affiliate of Plaintiff Orion Investments, is the original developer of a subdivision in Louisville, Kentucky known as the Glen Lakes Subdivision ("Glen Lakes"). Plaintiff is a real estate holding company that is the current owner of Sections 3 and 4 of Glen Lakes. Defendant McBride & Sons Homes Land Development is the current owner of Section 1 of Glen Lakes. Defendant entered a contract for purchase ("Contract") with Plaintiff to purchase Sections 3 and 4 on July 28, 2005.

On December 1, 2006, Defendant notified Plaintiff that it was terminating the Contract. Defendant stated that Plaintiff had failed to satisfy the contractual conditions found in sections 14(a) and 14(b) of the Contract. Plaintiff filed suit on December 22, 2006, requesting declaratory judgment and specific performance, alleging the Defendant was in breach of the Contract.

1

Plaintiff and Defendant filed cross-motions for summary judgment, with both parties arguing that they were entitled to judgment as matter of law under the unambiguous language of the Contract. Defendant argued that Plaintiff failed to complete three requirements under the Contract at the time the Contract was terminated. First, Defendant stated that a pump station of the sewer main was running on a gas generator, and not connected to the electrical system, which prevented a sewer line from being fully functional. Second, Defendant stated that the sewer system was not accepted by the Louisville/Jefferson County Metropolitan Sewer District ("MSD"). Finally, Defendant stated that a secondary water line was not connected to Section 3. Plaintiff argued that the three conditions were met, and that even if the conditions were not met, Plaintiff was entitled to equitable relief.

The Court granted summary judgment in favor of Plaintiff as to Defendant's arguments concerning the functionality of the sewer line, and the installation of the secondary water line. The Court declined to grant summary judgment concerning whether the sewer line was "accepted" by the applicable government agencies, finding that the term "accepted" was ambiguous. The Court also declined to grant summary judgment on Plaintiff's equitable arguments concerning substantial compliance, holding that based on the evidence before the Court, neither party was entitled to judgment as a matter of law.

Defendant has now filed a renewed motion for summary judgment. Defendant argues that when the Contract is reviewed as a whole, Plaintiff's term "accepted" is not ambiguous. Defendant also submits additional legal authorities concerning Plaintiff's equitable arguments, as well as submitting additional factual evidence concerning the equities of the situation.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**DISCUSSION**

**I. Accepted by MSD**

"[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105

(Ky. 2003). "In the absence of an ambiguity, Kentucky courts will enforce a written instrument strictly according to its terms and will assign those terms their ordinary meaning." *Davis v. Siemens Med. Solutions USA, Inc.,* 399 F. Supp. 2d. 785, 792 (W.D. Ky. 2005). "When other words, even in the same writing, are used as technical terms in a transaction entered into by parties knowledgeable in a technical field then the technical meanings of such words are the meanings to be ascribed to those words." *Cook United v. Waits*, 512 S.W.2d 493, 495 (Ky. 1974). Under Kentucky contract law, a contract is ambiguous "if it is reasonably susceptible to different or inconsistent interpretations." *Davis*, 399 F. Supp. 2d at 792. If a contract is unambiguous, the Court cannot reference extrinsic facts to determine the meaning of the contract. *Id.*

As set out in the Court's previous opinion, section 14(a) of the Contract specifies certain requirements for the construction of a sewer line that must be satisfied before Defendant was required to close on the Contract.

> The Sewer Line shall be (w) of a capacity sufficient to serve the lots in the Section 3 Property and the Section 4 Property as shown on the Revised Preliminary Plain, (x) constructed in a good and workmanlike manner, and in accordance with plans and specifications which satisfy the applicable requirements of the Governmental Authorities and which are approved by such Governmental authorities, (y) fully functional, and (z) accepted by the applicable Governmental Authorities or utility company.

Defendant argues that the Sewer Line was "accepted" by MSD when MSD sent Plaintiff a letter stating that the project that included the Sewer Line "was formally accepted by MSD on December 8, 2006." Plaintiff argues that the Sewer Line was "accepted" when MSD issued "as-built" drawings that confirmed that the Sewer Line was built correctly and in accordance with Kentucky law.

As a starting point, the Court must consider the plain language of the Contract. The parties

4

agreed that the Sewer Line must be "accepted" by the applicable government authorities. Because both parties are real estate developers, the Court should give the term "accepted" any technical meaning the word has in the parties' line of work. *See Cook United, Inc.*, 512 S.W.2d at 495. As such, the Court cannot ignore the fact that the parties intentionally chose to use the word "accepted", which MSD uses when contacting real estate developers after all the formalities regarding a sewer line extension have been completed.

Defendant's interpretation of the plain language of the Contract draws further support when the Contract is examined as a whole. *See Id.* (under Kentucky law, a writing is interpreted as a whole). Section 14 of the Contract is not the only section that discusses the requirement that the Sewer Line be accepted by MSD. Specifically, section 15 of the Contract, states that:

> "Section 3 Development Completion Status" of the Section 3 Property shall be at such time as all of the following conditions are satisfied: (i) the completion of the Sewer Line in accordance with Section 14(a) of the Contract . . . (iv) the Metropolitan Sewer District has issued written certification to Seller and/or to Purchaser that the Sewer Line has been completed in accordance with all applicable laws, ordinances, requirements and specifications, is released for the use and benefit of the Property, and has been accepted by the Metropolitan Sewer District.

Defendant argues that this provision resolves any ambiguity concerning the word "accepted" under the Contract, as well as giving Defendant an independent basis for terminating the Contract.

The requirement that MSD must issue written certification "that the Sewer Line has been completed in accordance with all applicable laws, ordinances, requirements and specifications, is released for the use and benefit of the Property, and has been accepted by [MSD]" shows that the parties intended "accepted" to apply to the December 8, 2006, letter, rather than the as-built drawings. The requirement that there must be written certification "that the Sewer Line has been completed in accordance with all applicable laws, ordinances, requirements and specifications" is

5

a separate consideration from the requirement that there must be written certification that the Sewer Line "has been accepted by [MSD]." The Court finds that MSD's certification of the as-built drawings satisfies the requirement that MSD must provide written certification that the Sewer Line was completed in accordance with Kentucky law, but that it does not qualify as written certification that the Sewer Line was accepted by MSD. For this reason, Plaintiff's interpretation of the word "accepted" is not reasonable under the plain language of the Contract.

Plaintiff argues that the "formal" acceptance is only a ministerial act, in which MSD sent a form letter to the developer. However, the December 8, 2006, letter, does not state that the project was accepted as of the completion of the as-built drawings. Instead, it clearly states that the project was accepted on December 8, 2008.

Even if the letter did not state that acceptance occurred on December 8, 2006, and assuming that MSD accepted the Sewer Line in November, Defendant would still be entitled to summary judgment. If all of the requirements of section 14(a) of the Contract were satisfied and the mailing of the letter was merely a ministerial act, section 15 of the Contract still would not have been satisfied. While section 14 of the Contract may not require that the Sewer Line be accepted in writing, section 15 does require written certification. It is the December 8, 2008, letter that serves as the written certification that the Sewer Line was accepted by MSD.

Based on the above considerations, the Court finds that the term "accepted" is not reasonably susceptible to more than one interpretation, and that the Sewer Line was not accepted until December 8, 2006.

## II. Termination of the Contract

Because the Sewer Line was not accepted until December 8, 2006, Defendant argues that it was entitled to terminate the Contract. Section 15 of the Contract required that certain conditions must be fulfilled before Defendant would be required to close on Section 3 of Glen Lakes. The Contract provides that:

> Notwithstanding anything set forth in this Contract to the contrary, if Section 3 Development Completion Status is not achieved . . . such that the Section 3 Closing Date shall occur on or before December 31, 2006, then Purchaser, in its sole and absolute discretion, reserves the right upon ten (10) days written notice to Seller thereafter to . . .terminate this Contract upon written notice to Seller and upon such termination the Title Company shall immediately release the Deposit and shall deliver the Deposit to Purchaser and neither Seller nor Purchaser shall have any further liabilities to the other under this Contract whatsoever except as otherwise expressly provided herein.

Defendant was authorized to terminate the Contract if the Section 3 closing would take place after December 31, 2006. The Section 3 closing date is 30 days after the date Defendant received written notice confirming "Section 3 Development Completion Status." As noted above, Section 3 Development Completion Status occurs:

> at such time as all of the following conditions are satisfied: (i) the completion of the Sewer Line in accordance with Section 14(a) of the Contract . . . (iv) the Metropolitan Sewer District has issued written certification to Seller and/or to Purchaser that the Sewer Line has been completed in accordance with all applicable laws, ordinances, requirements and specifications, is released for the use and benefit of the Property, and has been accepted by the Metropolitan Sewer District.

Therefore, under the Contract, if the Sewer Line was not accepted 30 days before the December 31, 2006, deadline, Defendant may terminate the Contract. Because Defendant notified Plaintiff of the Contract termination on December 1, 2006, Plaintiff terminated the Contract when it became impossible to close on December 31, 2006.

Plaintiff argues that the actual closing date deadline was January 2, 2007, rather than

Case 3:06-cv-00657-TBR   Document 84   Filed 08/27/09   Page 8 of 12 PageID #: 1922

December 31, 2006. Plaintiff bases this argument on the Contract provision that states:

> If the last day for giving notice, performance of any obligation or condition or the Closing hereunder is a Saturday, Sunday or legal holiday in the Commonwealth of Kentucky, then such last day shall be extended to the next succeeding business day thereafter.

Plaintiff contends that because December 31, 2006, was a Sunday, and January 1, 2007, was a holiday, the deadline for closing should be extended to January 2, 2007. However, the December 31, 2006, deadline was established "notwithstanding anything set forth in this Contract to the contrary." In addition, it is possible to reconcile the two provisions by extending the 30 day closing period rather than altering the December 31 closing deadline. In other words, if the date of the closing were to fall on December 31, 2006, it is the day of the closing that would be extended, rather than the December 31, deadline. This would push the closing date to January 2, 2007, which is two days past the deadline. Therefore, Defendant did not prematurely terminate the Contract.

Finally, the fact that MSD accepted the Sewer Line before 10-day notice period had expired does not prevent Defendant from being entitled to judgment as a matter of law. The 10-day notice provision does include any express authorization allowing Plaintiff an opportunity to cure any deficiencies. In addition, even though MSD accepted the Sewer Line before the 10-day notice period was finished, this did not cure the problem that the closing would not occur on or before December 31, 2006. If the acceptance had achieved such completion status on December 8, 2006, the Closing still would not have occurred until January 7, 2007. Since January 7, 2007, is a Sunday, the closing date would be extended to January 8, 2007. As such, the closing still could not have occurred before the December 31, 2006 deadline, and Defendant properly terminated the Contract.

**III. Equity**

In the original motion for summary judgment, Plaintiff argued that even if they failed to achieve Section 3 Development Completion Status by December 1, 2006, the Court should still grant Plaintiff specific performance, because the completion of the Contract was at most a week late. In response, Defendant cited Kentucky case law holding that when there exists a time is of the essence clause, "strict performance in time is necessary." In response, Plaintiff argued that the enforcement of the time is of the essence provision would result in an unjust forfeiture. Defendant never brought forth any evidence that enforcing the Contract would not result in an unjust forfeiture, instead relying solely on the existence of the time is of the essence provision.

The Court denied both parties requests for summary judgment regarding Plaintiff's equitable arguments. The Court held that under Kentucky law, a time is of the essence clause does not foreclose all equitable relief if the result would be an unjust forfeiture. The arguments raised in Defendant's renewed motion do nothing to change the Court's determination..

Defendant cites several cases stating that an express time is of the essence provision will be enforced in equity. Under Kentucky law, "[i]f a time for performance is specified, and time is of the essence of the contract, a strict performance in point of time is necessary, unless waived; but, if time is not of the essence of the contract, a strict performance is not ordinarily regarded as essential; it being sufficient if the performance is within what is under the circumstances a reasonable time of the date stipulated." *Browning v. Huff*, 263 S.W. 661, 662 (Ky. 1924). "If it appears that it was their intention to make time the essence of the contract, it will be so regarded in equity, but unless such intention was shown it will not be so regarded." *Main v. Sevier*, 299 S.W. 972, 973(Ky. 1927).

9

However, Kentucky contract law, like the law of most jurisdictions, has a policy against forfeitures. "Forfeitures are not favored either at law or in equity. A forfeiture from its nature implies the taking away from one of some pre-existing right, and this the courts will never do unless the equities of the situation are such there is no way to avoid it." *Hogg v. Forsythe*, 248 S.W. 1008, 1011 (Ky. 1923). *See also Tenner v. Carmack*, 181 S.W.2d 455, 456-57 (Ky. 1944) ("We would nevertheless be justified in refusing to sanction a forfeiture, if such a decree would be inequitable."); *Roberts v. Babb*, 137 S.W.2d 1112, 1116 (Ky. App. 1940) ("A forfeiture will never be decreed when upon equitable principles it works an injustice."); *Case v. Stacey*, 143 S.W.2d 497, 500 (Ky. 1940) ("At the outset we may say that forfeitures are not looked upon with favor. The grounds upon which forfeiture is allowed should be well established. It is the general rule that forfeiture should not be declared, when upon equitable principles injustice would result.")*; Warfield Natural Gas Co. v. Ward*, 51 S.W.2d 256, 257 (Ky. 1932).("Forfeitures are not favored. A forfeiture will never be adjudged when upon equitable principles this would be unjust.")

Given the above authorities, the Court's analysis of Kentucky contract law is unchanged from its previous opinion. Kentucky courts will enforce a negotiated time is of the essence provision in equity, but not when such enforcement would result in an unjust forfeiture. If the forfeiture is egregious enough, even a negotiated time is of the essence clause will yield to the demands of equity. However, "[i]n the absence of circumstances justifying relief, courts do not make contracts different from those that the parties make for themselves, even when the forfeiture provisions are harsh." *Miller Dairy Products Co. v. Puryear*, 310 S.W.2d 518 (Ky. 1958).

Plaintiff argues that the forfeiture in this case are its lost profits and the costs it incurred while carrying the property for two years. The Court does not find lost profits to be an unjust

10

forfeiture. Such a loss is distinguishable from the "substantial performance" cases cited by Plaintiff, in which a builder will still be entitled to recover for defective or incomplete work under a construction contract. *See Meador v. Robinson*, 263 S.W.2d 118 (Ky. 1953). If a failure to completely perform a contract would prevent all recovery under the contract, a builder would recover nothing for his work if he made even the smallest mistake. In this case, Plaintiff still owns Sections 3 and 4, and has lost only the benefit of its bargain with Defendant. As such, this is not the sort of egregious forfeiture that could justify the Court ignoring an express time is of the essence provision.

**IV. Return of Deposit and Attorneys' Fees**

Finally, Defendant requests the release of the earnest money deposit, as well as an award of attorneys' fees and court costs. Under the section 15(a)(i) of the Contract, upon termination of the Contract "the Title Company shall immediately release the Deposit and shall deliver the Deposit to [Defendant]." Under section 2(b)(i) Defendant deposited $83,000 with Mattingly-Ford, P.S.C. The deposit is held in an interest bearing account, and all interest is paid to Defendant. Under the Contract, Defendant is entitled to the release and delivery of the deposit. However, the because the deposit is held by a third party rather than by Plaintiff, and Defendant is already receiving interest from the deposit, the Court is unconvinced that Defendant is entitled to any prejudgment interest.

Section 19 of the Contract provides that:

> In the event that either party hereto brings any action or proceeding for a declaration of the rights of the parties under this Contract or for any alleged breach [of the Contract], . . . the prevailing party in any such action shall be entitled to an award of reasonable attorneys' fees and any court costs incurred in such action.

Because Plaintiff brought an action for breach of the Contract, and Defendant is the prevailing party, Defendant is entitled to its reasonable attorneys' fees and court costs.

## CONCLUSION

For the above reasons, Defendant's Renewed Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.